UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ST. HELENA CLEAR LAKE HOSPITAL,

*Plaintiff*,

v.

XAVIER BECERRA, Secretary, U.S. Department of Health and Human Services,

*Defendant*.

Civil Action No. 1:19-cv-00141 (CJN)

### MEMORANDUM OPINION

St. Helena Clear Lake Hospital, a Medicare Critical Access Hospital, challenges the Department of Health and Human Services' decision denying the hospital's claim for the reimbursement of certain health care costs under the Medicare health insurance program. *See generally* Compl., ECF No. 1. The Parties have cross-moved for summary judgment. *See generally* Pl.'s Mot. Summ. J. ("Pl.'s Mot."), ECF No. 10; Def.'s Mot. Summ. J. ("Def.'s Cross-Mot."), ECF No. 12. For the reasons discussed below, the Court denies St. Helena's Motion and grants Defendant's Cross-Motion.

### I.   Background

St. Helena is a short-term acute care hospital located in California. Under the Medicare program, it is designated as a Critical Access Hospital. These facilities differ from most other short-term acute care hospitals in that they receive Medicare reimbursement under the reasonable cost system. 42 C.F.R. § 413.1(d).

From 2005 to 2008, St. Helena contracted with physicians in certain specialties to provide on-call coverage for inpatient hospital services. St. Helena sought reimbursement from

Medicare for those costs, which the Medicare contractor responsible for auditing St. Helena's Medicare cost reports disallowed. St. Helena appealed that decision to the Provider Reimbursement Review Board, which concurred with the Medicare contractor.

The Court begins with a review of the Medicare insurance program and the system for reimbursing Critical Access Hospitals, like St. Helena, for services provided to Medicare beneficiaries.

## A. Statutory and Regulatory Provisions

### 1. The Medicare Program

The Medicare program, established by Title XVIII of the Social Security Act, 42 U.S.C. § 1395, *et seq.*, pays for covered medical care provided to eligible aged and disabled persons. Congress entrusted the Secretary with determining proper Medicare payments to hospitals. And the Secretary delegated that authority to the Centers for Medicare & Medicaid Services ("CMS"). Under a "complex statutory and regulatory regime," *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 404 (1993), known as Medicare Part A, the Secretary, through CMS, pays participating hospitals for inpatient care they provide to Medicare beneficiaries.

At one time, Medicare reimbursed participating hospitals for the "reasonable costs" actually incurred providing inpatient services to Medicare beneficiaries. *Methodist Hosp. of Sacramento v. Shalala*, 38 F.3d 1225, 1227 (D.C. Cir. 1994) (quoting 42 U.S.C. § 1395f(b) (1988)). But in 1983, Congress directed the Department of Health and Human Services to implement a "prospective payment system." 42 U.S.C. § 1395ww(d). Under this system, hospitals generally receive fixed payments for different inpatient services, regardless of the actual cost to the hospital. *See id.* CMS now pays most acute care hospitals for inpatient services furnished to Medicare beneficiaries at fixed rates through something called the Inpatient

2

Prospective Payment System. *See generally Dist. Hosp. Partners, L.P. v. Burwell*, 786 F.3d 46, 49 (D.C. Cir. 2015).

### 2. Critical Access Hospitals and the Reasonable Cost System

In 1997, Congress exempted many rural hospitals from the Inpatient Prospective Payment System when it created the Critical Access Hospital designation. Critical Access Hospitals instead receive reimbursement for inpatient services under the reasonable cost system, 42 U.S.C. § 1395i-4(c)(2); 42 C.F.R. § 413.1(d), and receive payment at a rate of 101 percent of the reasonable costs of furnishing inpatient and outpatient services to Medicare beneficiaries. *See* 42 U.S.C. §§ 1395f(l)(1), 1395m(g)(1).

Medicare hospitals subject to the reasonable cost system are paid the lesser of the "reasonable cost" of or the "customary charges" for services they furnish to Medicare beneficiaries. 42 U.S.C. § 1395f(b)(1). Congress defined "reasonable cost" broadly as "the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services." 42 U.S.C. § 1395x(v)(1)(A).

Congress empowered the Secretary "to issue regulations defining reimbursable costs and otherwise giving content to the broad outlines of the Medicare statute." *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 507 (1994). Specifically, Congress authorized the Secretary to further define both the "reasonable cost" of health care services to be reimbursed, and the "items to be included" in the category of reimbursable costs. 42 U.S.C. § 1395x(v)(1)(A).

Pursuant to this authority, the Secretary promulgated general regulations to better articulate the items included in the reasonable costs category as "all necessary and proper costs incurred in furnishing the [Medicare] services." 42 C.F.R. § 413.9(a). And the Secretary defines "necessary and proper" as "costs that are appropriate and helpful in developing and maintaining the operation of patient care facilities and activities. They are usually costs that are common and

accepted occurrences in the field of the provider's activity." *Id.* § 413.9(b)(2). Such costs include "both direct and indirect costs and normal standby costs." 42 C.F.R. § 413.9(c)(3).

When it comes to the amount reimbursed under the reasonable cost system, the Secretary has noted that medical costs "vary from one provider to another and the variations generally reflect differences in scope of services and intensity of care." 42 C.F.R. § 413.9(c)(2). The reasonable cost regulations seek to reimburse each provider with its "actual costs, however widely they may vary from one institution to another." *Id.* But there are limits. For instance, the reasonable cost system will not reimburse a provider's actual costs if that "institution's costs are found to be substantially out of line with other institutions in the same area that are similar in size, scope of services, utilization, and other relevant factors." *Id.*

The regulations also specifically address inpatient and outpatient services provided at Critical Access Hospitals. *See* 42 C.F.R. § 413.70(a), (b). Medicare reimburses, at a rate of 101 percent, all reasonable costs a Critical Access Hospital incurs while furnishing inpatient and outpatient services to Medicare beneficiaries. *See* 42 U.S.C. §§ 1395f(l)(1), 1395m(g)(1).

### 3. On-Call Costs

After Congress created the Critical Access Hospital designation in 1997, CMS (then known as the Health Care Financing Administration) issued the first series of the regulations governing those hospitals. 63 Fed. Reg. 26318 (May 12, 1998). During the comment period for that initial rulemaking, CMS explained, in response to a question regarding temporary substitute physicians, that "Medicare does not recognize costs of 'on-call' physicians as allowable costs of operating a [Critical Access Hospital]." *Id.* at 26353.

Only two years later, Congress, through the enactment of Section 204 of Public Law 106–554, carved out an exception to that general prohibition. The relevant part of the statute provides that with regard to "reasonable costs of outpatient critical access hospital services . . .

4

the Secretary shall recognize as allowable costs, amounts . . . for reasonable compensation and related costs for emergency room physicians who are on call." 42 U.S.C. § 1395m(g)(5).

Based on this congressional directive, CMS implemented regulations relating to the reimbursement of these on-call costs. The regulation stated:

> Effective for cost reporting periods beginning on or after October 1, 2001, the reasonable costs of outpatient [Critical Access Hospital] services under paragraph (b) of this section may include amounts for reasonable compensation and related costs for an emergency room physician who is on call but who is not present on the premises of the [Critical Access Hospital] involved, is not otherwise furnishing physician's services, and is not on call at any other provider or facility.

42 C.F.R. § 413.70(b)(4). In the preamble to this final rule, the Secretary explained that prior to Congress's enactment of this exception, Critical Access Hospitals were not to include "any costs of compensating physicians who are not present in the facility but are on call." 66 Fed. Reg. 39828, 39922–23 (Aug. 1, 2001).

### 4. Administration of Medicare Reimbursement

CMS contracts with private insurance companies to act as Medicare Administrative Contractors, which assist in the day-to-day operations of the program. 42 U.S.C. §§ 1395u(a), 1395kk-1(a)(4). Each Medicare-participating hospital is assigned a contractor. The contractor audits annual cost reports submitted by the provider to determine the Medicare reimbursement payment to be made to the provider. *See* 42 C.F.R. §§ 413.20, 413.24(f)(4)(iii). To receive payment from Medicare for services rendered, the provider must file a Medicare cost report with its contractor at the end of each cost reporting period. 42 C.F.R. § 413.20. The contractor then reviews that report and issues a Notice of Program Reimbursement setting forth the amount of allowable Medicare payments. 42 C.F.R. § 405.1803.

If a provider disagrees with a contractor's Notice of Program Reimbursement, the provider may appeal the decision to the Provider Reimbursement Review Board—an

administrative tribunal within the Department of Health and Human Services. A Board decision represents the final agency decision unless the Secretary, on his own motion, decides to reverse, affirm, or modify the Board's decision. 42 U.S.C. § 1395oo(f). And the Secretary has delegated his authority to review Board decisions to the CMS Administrator. 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. § 405.1875(a)(1). A provider may then seek judicial review of the Board's or the CMS Administrator's decision. 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. § 405.1877(b).

### B. Procedural History

St. Helena submitted its Medicare cost reports for fiscal years 2005 through 2008 to its Medicare contractor. *See* November 26, 2018 PRRB Decision, ECF No. 1-1, at 2. During these years, St. Helena contracted with physicians in the specialties of surgery, obstetrics, pediatrics, and cardiology to provide on-call coverage for inpatient hospital services. *Id.* at 3. On the cost reports, St. Helena reported costs for compensating these physicians, which included providing on-call services as part of furnishing inpatient care. *Id.* The Medicare contractor disallowed these on-call costs on the grounds that they were not emergency costs and thus were not allowable. *See id.*

St. Helena appealed to the Provider Reimbursement Review Board. *See id*. After conducting a hearing, the Board affirmed the Medicare contractor's decision. *See id.* at 8. The Board reasoned that, under 42 C.F.R. § 413.70(b)(4), Medicare reimbursement "is only available to [Critical Access Hospitals] for outpatient on-call services rendered in the *emergency room* setting." *Id.* at 6 (emphasis added). The Board determined that St. Helena's "specialty on-call services" were related to *inpatient* services and thus not eligible for reimbursement. *Id.*

The Board then analyzed St. Helena's claims that the costs must be reimbursed because they were necessary to comply with California law or to stabilize a hospital inpatient. *See id.* at 7. The Board concluded that California law did not require specialty physicians to be on-call and

that St. Helena's emergency room physicians, trained in emergency medicine, would be capable of stabilizing a hospital inpatient.  *Id.*  The Board therefore affirmed the Medicare contractor's determination disallowing St. Helena's claimed specialty physician on-call expenses.  *Id.*

The Secretary, through the CMS Administrator, declined to review the Board's decision.  As a result, the Board's decision became the final, reviewable decision of the Secretary, which St. Helena challenges here.

## II.   Standard of Review

In this action proceeding under the Medicare statute, 42 U.S.C. § 1395oo(f)(1), judicial review is governed by the standards of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, and is decided on the administrative record.  *Southeast Ala. Med. Ctr. v. Sebelius*, 572 F.3d 912, 916–17 (D.C. Cir. 2009).  Under the APA, a court will "hold unlawful and set aside agency action, findings, and conclusions" if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," *id.* § 706(2)(C).  The arbitrary and capricious standard is "'narrow' . . . as courts defer to the agency's expertise."  *Ctr. for Food Safety v. Salazar*, 898 F. Supp. 2d 130, 138 (D.D.C. 2012) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. at 29, 43 (1983)).  Under this standard, the Court presumes the validity of agency action, *see, e.g.*, *Davis v. Latschar*, 202 F.3d 359, 365 (D.C. Cir. 2000), and will not "substitute [its] judgment for that of the agency," *Sioux Valley Rural Television v. F.C.C.*, 349 F.3d 667, 674 (D.C. Cir. 2003).

When the issue is whether an agency properly interpreted its own regulation, the Court gives substantial deference to the agency's interpretation.  *Thomas Jefferson Univ.*, 512 U.S. at 512.  The agency's interpretation is given "controlling weight unless it is plainly erroneous or inconsistent with the regulation."  *Id.* (quoting *Bowles v. Seminole Rock & Sand Co.*, 325 U.S.

410, 414 (1945)). In Medicare cases such as this one, the "tremendous complexity of the Medicare statute . . . adds to the deference which is due to the Secretary's decision." *Dist. Hosp. Partners*, 786 F.3d at 60 (quoting *Methodist Hosp.*, 38 F.3d at 1229).

### III.  Analysis

#### A.  Deference to the Agency's Decision

At the outset, the Parties disagree about whether the Provider Reimbursement Review Board's decision disallowing on-call costs for physicians providing inpatient hospital services is entitled to deference. St. Helena insists that it is not because Congress authorized only the Secretary, and not the Board, to determine which costs qualify as reasonable. Pl.'s Reply, ECF No. 15, at 6. And, Plaintiff argues, because the determination to disallow inpatient on-call costs was made "only by the [Board] in a decision the Secretary's designee did not review," it should not receive deference. *Id.* at 6.

But the Medicare statute is not so narrow. It "instructs the reviewing court to apply the provisions of the Administrative Procedure Act, which requires federal courts to be 'highly deferential' in their review of agency action," regardless of whether the agency action is a decision by the Board or the Secretary. *Emanuel Med. Ctr., Inc. v. Sebelius*, 37 F. Supp. 3d 348, 355 (D.D.C. 2014) (quoting *Bloch v. Powell*, 348 F.3d 1060, 1070 (D.C. Cir. 2003)). The fact that the Board's decision was not later altered or adopted by the CMS Administrator (or the Secretary) does not alter the deference due.

#### B.  General Reasonable Cost Provisions

Turning to the substance of St. Helena's claims, it first argues that the Provider Reimbursement Review Board's decision to disallow on-call costs for physicians in an inpatient setting was arbitrary and capricious. Those costs, St. Helena claims, are expressly allowable under the Medicare Act and its implementing regulations. St. Helena begins by looking to

8

Medicare's "reasonable cost" provisions. *See* 42 U.S.C. § 1395x(v)(1)(A); *see also* 42 C.F.R. § 413.9(a), (b), and (c). St. Helena insists that on-call costs for physicians in an inpatient setting are necessarily "reasonable cost[s]" that therefore must be reimbursed.

But the general provisions on which St. Helena relies do not expressly allow reimbursement for the costs of an on-call physician in an inpatient setting. And they do not "permit reimbursement of *all* reasonable costs across the board." *See St. Luke Community Health Care v. Sebelius*, 2010 WL 1839411, at *7 (D. Mont. Apr. 14, 2010) (emphasis added). Instead, reimbursable reasonable costs are "determined [by the Secretary] in accordance with regulations establishing the method . . . and the items to be included, in determining such costs for various types or classes of institutions, agencies, and services." 42 U.S.C. § 1395x(v)(1)(A). St. Helena cannot demonstrate that the plain text of these provisions compels the conclusion that non-emergency room on-call costs are reasonable and therefore reimbursable. *See Thomas Jefferson Univ.*, 512 U.S. at 512.

St. Helena also argues that the costs must be allowable under 42 C.F.R. § 413.9 because they are "necessary and proper." *See* Pl.'s Mot. at 21–25. Necessary and proper costs are defined by regulation as "costs that are appropriate and helpful in developing and maintaining the operation of patient care facilities and activities." 42 C.F.R. § 413.9(b)(2). They are also those costs that are "common and accepted occurrences" in the provider's field. *Id.*

St. Helena insists that the costs at issue here were necessary because: (1) California state licensing and certification required the hospital to have these physician services on call; and (2) specialty on-call physicians were needed to stabilize patients upon inpatient admission in compliance with the Emergency Medical Treatment and Labor Act ("EMTALA"), 42 U.S.C. § 1395dd. *See* Pl.'s Mot. at 21–25. The Board examined these justifications, but ultimately

9

disagreed that they supported a finding that the claimed costs were "necessary and proper." *See* PRRB Decision at 7. With regard to the argument that California state licensing and certification requirements necessitated the on-call costs at issue, the Board concluded, after a review of the relevant California statutes, that those sections merely state the ideal physician qualifications.[1] They did not dictate that St. Helena must have certain specialty physicians on-call to provide inpatient services.

As for St. Helena's argument that the on-call costs were necessary to stabilize inpatients in compliance with the EMTALA, the Board noted that the EMTALA requires hospitals to stabilize the medical condition of a patient before the patient can be transferred to another facility, 42 U.S.C. § 1395dd(b)(1)(B), but does not require on-call specialty physicians to do so. In fact, the statute requires only that a hospital use "the staff . . . available at the hospital" to stabilize a patient. *Id.* § 1395dd(b)(1)(A). After reviewing St. Helena's emergency room staffing contracts, the Board reasoned that St. Helena's emergency room physicians had "the necessary skills to stabilize a patient and, if necessary, transfer the patient to another hospital." PRRB Decision, ECF No. 1-1, at 7. The on-call specialty physicians were, the Board concluded, unnecessary to comply with the EMTALA. *Id.*

St. Helena has not demonstrated that the Board's examination and ultimate dismissal of these justifications was arbitrary and capricious. *See* 5 U.S.C. § 706(2)(A). The Board articulated a rational connection between the facts found and its ultimate decision. And it appropriately considered the relevant facts in making that decision. *See Marsh v. Or. Nat. Res.*

---

[1] The Board reviewed several provisions of California Title 22, including Sections 70225 (Surgical Services), 70415 (Emergency Medical Services), 70417 (Basic Emergency Medical Services Physician on Staff), 70495 (Intensive Care Service Staff), 70549 (Perinatal Unit Staff), and 70653 (Standby Emergency Medical Service, Physicians on Call). *See* PRRB Decision, ECF No. 1-1, at 7 n.29.

*Council*, 490 U.S. 360, 378 (1989).  Nor can the hospital demonstrate that the Board's interpretation of "necessary and proper" costs to exclude on-call specialty physicians was plainly erroneous.  *Thomas Jefferson Univ.*, 512 U.S. at 512.  St. Helena has therefore failed to demonstrate that the Medicare Act and its implementing regulations compel the conclusion that on-call costs for specialty inpatient are reimbursable as reasonable costs.

### C.  The Board's Reliance on 42 C.F.R. § 413.70(b)(4)

St. Helena next argues that the Board's decision was arbitrary and capricious because it relied on 42 C.F.R. § 413.70(b)(4).  That regulation provides that "the reasonable costs of outpatient [critical access hospital] services . . . may include amounts for reasonable compensation . . . for an emergency room physician who is on call."  42 C.F.R. § 413.70(b)(4)(i).  It is the only Medicare regulation expressly permitting reimbursement for the cost for on-call services.

The Board, relying on the fact that neither Congress nor the Secretary has expressly permitted other on-call costs, interpreted § 413.70(b)(4) to mean that the only reimbursable on-call costs are for physicians in an emergency room setting.  *See* PRRB Decision at 6. St. Helena's claim for on-call costs for physicians assisting in inpatient settings was therefore excluded from reimbursement.  *See id.*

The Board's interpretation of the agency's own regulation is entitled to substantial deference.  *See supra*, Part IIIA.   St. Helena must therefore demonstrate either that the Board's interpretation is inconsistent with the regulation or that an alternative interpretation is compelled by the regulation's plain language (or the intent behind its promulgation).  *See Thomas Jefferson Univ.*, 512 U.S. at 512.

St. Helena has not done so here.  The hospital claims that the regulation is inapposite because the regulation does not "explicitly or implicitly, positively or negatively" affect

11

"Medicare reimbursement for [critical access hospitals] in an inpatient setting." Pl.'s Mot. at 2. But St. Helena cannot show that the plain language of the regulation compels its alternative interpretation. Instead, the Secretary's determination that the negative implications of 42 C.F.R. § 413.70(b)(4) disallow reimbursement for on-call costs for physicians in an inpatient setting is entirely consistent with the governing statute and regulations. It reflects a reasonable determination to which deference is due.

The only court to previously address this issue agreed. It concluded, as this Court now does, that the agency reasonably interpreted § 413.70(b)(4) to limit reimbursable on-call costs to those costs that relate to emergency room care. In *St. Luke Community Health Care v. Sebelius*, a hospital argued that 42 C.F.R. § 413.70(b)(4) applied only to on-call costs for emergency room physicians and was therefore inapplicable to the hospital's request for the reimbursement of its costs for the on-call services of nurse anesthetists. 2010 WL 1839411, at *10 (D. Mot. Apr. 14, 2010), adopted by, 2010 WL 1839405 (D. Mont. May 5, 2010). The court disagreed and deferred to the Secretary's decision interpreting § 413.70(b)(4) to "identify emergency room physician on-call costs as the only on-call costs that are reimbursable under Medicare." *Id.*

Here too, St. Helena has failed to demonstrate that the Board's interpretation was "plainly erroneous or inconsistent" with 42 C.F.R. § 413.70(b)(4). *Thomas Jefferson Univ.*, 512 U.S. 512. The Court therefore holds that the Board did not err when it relied on that regulation in disallowing reimbursement for non-emergency room on-call costs.

### D.  Procedural Validity

Finally, St. Helena argues that because there is no statutory or regulatory prohibition specifically excluding the reimbursement of costs for on-call physicians in an inpatient setting, the Secretary cannot disallow those costs until such a regulation has been through the notice and comment rulemaking process. *See* Pl.'s Mot. at 26–27. But St. Helena ignores that the

Secretary, in the absence of a binding rule promulgated through notice and comment procedures, is entitled to determine what constitutes a reasonable cost through the adjudicatory process. *See SEC v. Chenery Corp.*, 332 U.S. 194, 202–03 (1943) (holding that agencies can make policy through rulemaking or adjudication). The Secretary is not required to address every conceivable reasonable cost policy through notice-and-comment rulemaking. *See Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 96 (1995). And the Secretary is therefore certainly not required to address every potential medical service to be excluded from reimbursement.

Even if the Secretary were required to address potential exclusions through the notice and comment process, the Secretary's position excluding on-call costs has already been articulated through that process. In 1998, in response to a comment relating to a proposed rule, CMS stated that "Medicare does not recognize costs of 'on-call' physicians as allowable costs of operating a [critical access hospital]." 63 Fed. Reg. at 26353. This policy remains unaltered, except for the narrow exception to allow for the reimbursement of on-call physicians in an emergency room setting. *See* 42 U.S.C. § 1395m(g)(5); 42 C.F.R. § 413.70(b)(4).

## IV.     Conclusion

For the foregoing reasons, the Court grants the Secretary's Motion for Summary Judgment, ECF No. 12, and denies St. Helena's Motion for Summary Judgment, ECF No. 10. An Order will be issued contemporaneously with this Memorandum Opinion.

DATE: March 31, 2021

CARL J. NICHOLS
United States District Judge